## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DENISE W.,

        *Plaintiff,*

 vs.

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

        *Defendant.*

Case No. 20-CV-1184-EFM

## MEMORANDUM AND ORDER

Plaintiff, Denise W., seeks review of a final decision by Defendant, the Acting Commissioner of Social Security, denying her application for disability and supplemental security insurance benefits under the Social Security Act. Because the administrative decision was supported by substantial evidence in the record, the Court affirms the Commissioner's denial of benefits.

### I.      Factual and Procedural Background

In January 2018, Plaintiff filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Insurance, alleging disability beginning November 21, 2017, due

---

[1] On July 9, 2021, Kilolo Kijakazi was named the Acting Commissioner of Social Security. She is automatically substituted as the defendant in this case. *See* Fed. R. Civ. P. 25(d).

to epilepsy, seizures, migraines, depression, anxiety, asthma, high blood pressure, memory loss, sleep apnea, and back pain.[2]  Plaintiff's applications were denied initially and on reconsideration. After a hearing held March 5, 2019, Administrative Law Judge Michael D. Mance ("the ALJ") issued an order on June 12, 2019, concluding that Plaintiff was not disabled.  The Appeals Council denied review on June 4, 2020.

In October 2015, Plaintiff presented to neurologist Jonson Huang, M.D., reporting frequent instances of seizure activity possibly related to stress, anxiety, and fatigue.  She also reported noticeable episodes of word-searching and forgetfulness.  Dr. Huang's notes from the visit indicate that Plaintiff's orientation, memory, attention, concentration, knowledge, and language were normal.  He also noted that her gait and movements were normal.  Dr. Huang recommended an EEG, but did not adjust Plaintiff's medication, pending the results of the EEG.  An EEG was conducted a few days later.  Although the EEG results were consistent with a history of seizures, there was no evidence on ongoing seizure activity.

Plaintiff continued to visit Dr. Huang throughout 2016 and 2017.  She continued to report significant seizure activity, yet Dr. Huang's examinations continued to show normal memory, attention, concentration, and knowledge, as well as normal movement and gait.  Although Dr. Huang recommended a 72-hour EEG in August 2016 due to Plaintiff's report of daily petit mal seizures, Plaintiff did not pursue the recommendation due to lack of insurance coverage.  A 72-hour EEG was eventually conducted in November 2016.  Although Plaintiff reported six episodes of petit mal seizures during the EEG, the EEG did not show associated electroencephalographic

---

[2] Plaintiff's request for review is limited to discussion of her seizure disorder, and thus, the Court will limit its focus to the medical evidence related to Plaintiff's seizures.

abnormalities.  Once again, however, the EEG showed spike and wave discharges consistent with a history of seizures.  In January 2017, Dr. Huang presented alternatives to Plaintiff's medication regimen, which Plaintiff deferred.  In April 2017, Dr. Huang continued Plaintiff's medication regimen without changes, noting an absence of conclusive evidence for recurrent seizures.  Dr. Huang continued to note normal mental and motor functions.

In July 2017, Plaintiff reported to Dr. Huang that she had an unwitnessed grand mal seizure after missing a dose of her medication and experiencing increased stress.  Dr. Huang increased Plaintiff's Lyrica dosage.  In early March 2018, Plaintiff presented to the Stormont-Vail Health Emergency Department due to weekly seizures and an incident of feeling weak all over.  The emergency care provider, Sarah Sartain, M.D., noted inconsistent exam findings.  Dr. Sartain noted that when providers raised any of Plaintiff's extremities, Plaintiff immediately dropped them back on the bed, but Plaintiff reached for objects without deficits.  The report also noted that there was no apparent distress and that Plaintiff's "concerns appear to be more social and based on patient's disability services" as Plaintiff had been seizure-free for three years prior to her disability benefits being terminated.[3]

Following her hospital visit, Dr. Huang referred Plaintiff to an epilepsy specialist, Ricky Lee, M.D. in late March 2018.  Dr. Lee noted that Plaintiff was experiencing different kinds of spells, but that he was "not entirely sure they are all seizure related."[4]  Dr. Lee stated that due to Plaintiff's ongoing anxiety, it was unclear whether her reported episodes of "staring off" were seizure-related or not.  He also noted that he wondered if some of Plaintiff's spells could be stress,

---

[3] SSA R., Doc. 14, p. 809.

[4] SSA R., Doc. 14, p. 1042.

rather than seizure related.  Dr. Lee reported that EEG monitoring for further assessment would be ideal, but that due to insurance issues, the EEG would have to be delayed.  Due to Plaintiff having reported a convulsive episode, Dr. Lee prescribed valproic acid.  In April 2018, Plaintiff again visited Dr. Huang.  She reported she had seven grand mal seizures and a full day of petit mal seizures all since February 2018.  Dr. Huang noted that Plaintiff had not started the valproic acid prescribed by Dr. Lee due to Plaintiff's concerns about side effects and the expense of the treatment.  Dr. Huang recommended that Plaintiff contact Dr. Lee to find alternative medication.

In late July 2018, Plaintiff was referred to Via Christi Hospital St. Francis by Dr. Lee for neuropsychological evaluation on the EEG Monitoring Unit.  It was noted that Plaintiff psychological testing showed that Plaintiff "is prone to developing physical symptoms in response to stress" and that "psychological factors are contributing to her seizures and difficulty in daily functioning."[5]  Plaintiff again visited Dr. Lee's office in October 2018, seeing Kelli Rice, APRN-C.  Ms. Rice's notes state that of two EEGs conducted in July and August 2018, neither showed seizure activity during the recordings.

In October 2018, Dr. Lee and Ms. Rice completed a medical source statement for Plaintiff.  Although it was noted that it was possible that Plaintiff would miss more than four days per month of work due to her seizures, all sections addressing Plaintiff's ability to lift/carry, use her hands/arms, sit/stand, remain on-task, manage stress, etc., were marked as "not applicable."[6]  It was further noted that the EEG results indicated generalized activity, but no clinical seizures.  In January 2019, Plaintiff again visited Dr. Huang.  Dr. Huang noted normal mental and motor

---

[5] SSA R., Doc. 14, p. 885.

[6] SSA R., Doc. 14, p. 847–48.

functions.  Dr. Huang recommended that Plaintiff continue her medication regimen and follow up with Dr. Lee regarding the possibility of increased dosages due to Plaintiff's reported recurring seizures.

A few weeks after Plaintiff's disability hearing in March 2019, but before the ALJ issued his order, Plaintiff underwent another 96-hour EEG.  This EEG showed one episode of seizure activity, although Plaintiff reported twelve additional events in the same 96-hour period without definite electrographic seizure activity present.  The Appeals Council declined to exhibit this evidence in the record, noting that the new information did "not show a reasonable probability that it would change the outcome of the decision."[7]  Plaintiff now argues that the ALJ's reasons for discounting the frequency, duration, and intensity of Plaintiff's stated limitations were insufficient and not supported by the record.  Plaintiff also argues that the Appeals Council erred in its finding that the new EEG was not material.

## II.    Legal Standard

Judicial review under 42 U.S.C. § 405(g) is limited to whether the defendant's decision is supported by substantial evidence in the record as a whole and whether the defendant applied the correct legal standards.[8]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the

---

[7] SSA R., Doc. 14, p. 8.

[8] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (citation omitted).

conclusion."[9]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."[10]

## III.      Analysis

Plaintiff submits two bases for reversal to the Court: (1) the ALJ discounted Plaintiff's Appeals allegations relating to her seizure disorder without sufficient support from the record, and (2) the Council erred in determining that the new EEG did not show a reasonable probability that it would change the outcome of the decision.  The Court concludes that neither argument merits reversal.

## A.      The ALJ's Decision Is Supported by Substantial Evidence

Plaintiff first argues that the ALJ violated SSR 16-3p by discounting the frequency, duration, and intensity of Plaintiff's stated limitations, arguing that the ALJ's reasoning was insufficient and not supported by the record.  Under SSR 16-3p, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."[11]  The Court concludes that the ALJ's decision does so.  The ALJ gave a number of well-supported reasons for concluding that Plaintiffs' reported symptoms were not as severe as Plaintiff claimed, including objective medical evidence, Plaintiff's conservative treatment, her activities of daily living, and evidence of

---

[9] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[10] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[11] *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (quoting SSR 16-3p, 2016 WL 1119029, at *9 (2016)).

malingering.  Although Plaintiff may disagree with the ALJ's conclusions, the Court must look to whether the ALJ's decision was supported by more than a scintilla of evidence—not whether the evidence *could* support a different finding.[12]

Here, although Plaintiff reported daily seizure activity, multiple EEGs were consistent with a history of seizures, not ongoing seizure activity.  Further, when Plaintiff presented to the Stormont-Vail Health Emergency Department, the emergency care provider noted inconsistent exam findings and that Plaintiff's "concerns appear to be more social and based on patient's disability services."  Moreover, Dr. Lee, an epilepsy specialist, also noted that he was "not entirely sure" that all of Plaintiff's reported spells were seizure related, including Plaintiff's frequently reported episodes of "staring-off."  Although Dr. Lee and Ms. Rice noted that it was possible that Plaintiff would miss more than four days per month of work due to her reported seizure activity, they also noted that the EEG results indicated generalized activity, but no clinical seizures. Additionally, Plaintiff testified that she struggled with mental fog and confusion, yet the medical record shows that her providers consistently noted normal orientation, memory, attention, concentration, knowledge, and language.  This evidence supports that ALJ's conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence.  The Court therefore concludes that the ALJ's findings were supported by substantial evidence in the record.

---

[12] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

**B.     There Is Not a Reasonable Probability That the EEG Results Submitted to the Appeals Council Would Change the Outcome of the ALJ's Decision**

In the period after Plaintiff's hearing in March 2019, but before the ALJ's June 2019 decision, Plaintiff underwent another EEG, which showed evidence of a seizure.   Plaintiff submitted this evidence to the Appeals Council.  The Appeals Council acknowledged that Plaintiff submitted additional treatment records but found that the evidence did "not show a reasonable probability that it would change the outcome of the decision." [13]  It therefore declined to exhibit the evidence.

Now, citing *Threet v. Barnhart*,[14] Plaintiff argues that the Appeals Council's decision was erroneous for its failure to explain why it found no basis for changing the ALJ's decision.  But, *Threet* is distinguishable from the circumstances here.  In *Threet*, the plaintiff submitted new evidence to the Appeals Council, but "without any reference to the newly submitted materials," the Appeals Council stated that there was no basis for granting the plaintiff's request for review.[15] The Tenth Circuit held that because it was unclear whether the Appeals Council had evaluated the entire record, including the new evidence, the Appeals Council had committed reversible error.[16]

Here, the Appeals Council explicitly recognized that Plaintiff had submitted additional treatment records and stated that the "evidence does not show a reasonable probability that it would change the outcome of the decision."[17]   The Tenth Circuit has repeatedly upheld similarly brief

---

[13] SSA R., Doc. 14, p. 8.

[14] 353 F.3d 1185 (10th Cir. 2003).

[15] *Id.* at 1191–92.

[16] *Id.* at 1192.

[17] SSA R., Doc. 14, p. 8.

analysis.  In *Hackett v. Barnhart*,[18] the plaintiff argued that the Appeals Council failed to give proper consideration to a state agency decision that became available after the hearing before the ALJ.[19]  Although the Appeals Council stated merely that "it had considered the additional evidence submitted 'but concluded that neither the contentions nor the additional evidence provides a basis for changing the Administrative Law Judge's decision,' " the Tenth Circuit declined to remand.[20]  Instead, it held, "our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."[21]  Subsequent decisions of the Tenth Circuit have followed suit.[22]   The Court therefore concludes that the Appeals Council's failure to explicitly discuss its reasoning does not constitute reversable error.

Next, Plaintiff argues that the Appeals Council erred in failing to exhibit the evidence. Whether additional evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review.[23]   The Appeals Council must review additional evidence if it "is

---

[18] 395 F.3d 1168 (10th Cir. 2005).

[19] *Id.* at 1172.

[20] *Id.* at 1172–73.

[21] *Id.* at 1173.

[22] *See, e.g., Foy v. Barnhart*, 139 F. App'x 39, 41–42 (10th Cir. 2005) (rejecting plaintiff's contention that that Appeals Council erred in failing to specifically discuss the effect of new evidence on the ALJ's previous decision); *Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006) ("While an express analysis of the Appeals Council's determination would have been helpful for purposes of judicial review, Mr. Martinez points to nothing in the statutes or regulations that would require such an analysis where new evidence is submitted and the Appeals Council denies review.  We therefore reject Mr. Martinez's contention that the Appeals Council erred by failing to specifically discuss Dr. Olivares' treatment records."); *Martinez v. Astrue*, 389 F. App'x 866, 868–69 (10th Cir. 2010) ("But if, as happened here, the Appeals Council explicitly states that it considered the evidence, there is no error, even if the order denying review includes no further discussion."); *Robinson v. Astrue,* 397 F. App'x 430, 432 (10th Cir. 2010) (holding the Appeals Council's statement that it considered additional evidence, "but concluded that it did 'not provide a basis for changing the Administrative Law Judge's decision' . . . is sufficient under our precedent"); *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) ("[T]he Appeals Council need not discuss the reasons why new evidence failed to provide a basis for changing the ALJ's decision.").

[23] *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (quoting *Threet*, 353 F.3d at 1191).

new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."[24] In addition, the claimant must show "good cause for missing the deadline to submit the evidence in [20 C.F.R. §§ 404.935 and 416.1435]."[25]

Here, Plaintiff argues that her evidence: (1) was new in that it was not available to the ALJ at the time of the hearing, (2) related to the period prior to the ALJ's decision as the EEG was performed between the Plaintiff's March 2019 hearing and the ALJ's decision in June 2019, and (3) "was material in that it further undermined the ALJ's finding that there was not 'any' clinical or objective evidence of seizure activity to support Dr. Lee's opinion and [Plaintiff]'s reports about her seizures."[26]   Curiously, the Commissioner does not respond to these arguments in the responsive briefing.  Instead, citing *Vallejo v. Berryhill*,[27] the Commissioner argues that the Court must simply conduct a substantial evidence review of the entire record—including the new evidence—notwithstanding the Appeals Council's decision not to exhibit the evidence.   That approach is not consistent with guidance from the Tenth Circuit, however.

"In *Vallejo*, the Tenth Circuit held that when a claimant submits new evidence to the Appeals Council *and the Appeals Council accepts and considers it*, that evidence becomes a part of the record to be considered by the Court in performing a substantial evidence review."[28]  But, in cases "where the Appeals Council *rejects* new evidence as non-qualifying and the claimant

---

[24] 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

[25] 20 C.F.R. §§ 404.970(c), 416.1470(c).

[26] Plf.'s Br., Doc. 15, at 13.

[27] 849 F.3d 951 (10th Cir. 2017).

[28] *Holder v. Berryhill*, 2019 WL 2716758, at *5 (D.N.M. 2019) (citing *Vallejo*, 849 F.3d at 955).

challenges that ruling . . . our general rule of de novo review permits us to resolve the matter and remand if the Appeals Council erroneously rejected the evidence."[29]  Bound by this precedent, the Court must determine on *de novo* review whether the Appeals Council erred in declining to exhibit the evidence.  It cannot simply review the new, unadmitted records under the substantial evidence standard as suggested by the Commissioner.

Because the Appeals Council declined to exhibit the evidence on the basis that there was not a reasonable probability that the evidence would change the outcome of the ALJ's decision, the Court will look only to the issue of materiality of the evidence.  "Evidence is material if the [Commissioner]'s decision might reasonably have been different had the new evidence been before him when his decision was rendered."[30]  Conducting a *de novo* review, the Court concludes that there was not a reasonable probability that the new medical records would have changed the outcome of the ALJ's decision.

As addressed above, there was ample evidence in the record that Plaintiff's symptoms were not as severe as claimed.  Although Plaintiff's new EEG showed evidence of one seizure in the 96-hour period, the logs also showed that Plaintiff reported twelve other events which did not show definite electrographic seizure activity.  This is consistent with the medical evidence in the record which demonstrates that while Plaintiff may experience some seizure activity, her claims regarding the frequency, duration, and intensity of her limitations are not supported by medical evidence.  As discussed above, the medical record contains notes from providers suggesting that Plaintiff's "concerns appear to be more social and based on patient's disability services" and that Plaintiff's

---

[29] *Krauser*, 638 F.3d at 1328 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

[30] *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (quoting *Cagle v. Califano*, 638 F.2d 219, 221 (10th Cir. 1981) (quotation marks and alterations omitted)).

reported spells may not all be seizure related.  Plaintiff's providers also consistently noted normal mental function, despite Plaintiff's claims of confusion and mental fog.  Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but also found that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence. Because Plaintiff's new evidence is consistent with that analysis, the Court concludes that there is not a reasonable probability that it would have changed the ALJ's decision, and the Appeals Council did not err in failing to exhibit the evidence.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERED**.

This case is closed.

Dated this 22nd day of October, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-12-